[629 NYS2d 746]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
MICHAEL TOLIVER, Appellant.

First Department, July 13, 1995

## APPEARANCES OF COUNSEL

*Lawrence M. Young* of counsel, New York City *(E. Joshua
Rosenkranz* and *Howard A. Pincus, Office of Appellate Defend-
er,* and *Simpson Thacher & Bartlett,* attorneys), for appellant.

*Mark Dwyer* of counsel, New York City *(Robert M. Morgen-*

*thau, District Attorney* of New York County, attorney), for respondent.

## OPINION OF THE COURT

SULLIVAN, J. P.

This appeal presents the question of whether the Trial Justice's absence from the courtroom, without defendant's consent, for brief periods during jury selection constitutes a per se ground for reversal.

Defendant was convicted, after a jury trial, of sodomizing a 13-year-old male in the Broadway-Lafayette/Bleeker Street subway station during the early morning hours of April 4, 1991. A bystander, waiting nearby for his wife, saw defendant, an older man, orally sodomizing the victim in a remote area of the station platform. Shortly thereafter, two police officers, after speaking with both the bystander-witness and the victim, arrested defendant.

The sufficiency of the proof offered by the People in support of the conviction is not challenged. Defendant does argue, *inter alia,* that the Trial Justice's absence from the courtroom while five prospective jurors, only one of whom was ultimately selected, orally answered the Court's written voir dire questionnaire and for a part of the prosecutor's examination during that same round of questioning, without any further showing, requires reversal. Citing this Court's decision in *People v Silver* (240 App Div 259), where we reversed a conviction, holding, "if the judge, for any length of time, absents himself completely from the court room, he thereby abdicates his functions and destroys the integrity of the proceedings" *(supra,* at 263), as well as precedents from the Second Department *(see, People v Rawlings,* 178 AD2d 619; *People v Lumpkin,* 173 AD2d 738), defendant contends that automatic reversal is required.

The facts giving rise to the claim are as follows. After speaking with the prospective jurors, individually, to determine whether they had any personal reasons which might interfere with their serving in this case, the Trial Justice had each of the jurors orally answer a questionnaire, consisting of 16 questions in all, which was intended to elicit routine background information. In the first round, 18 jurors responded, furnishing, presumably, a total of 288 answers. According to the Trial Justice's instructions, at the completion of the jurors' responses, each party was to be given 20 minutes

to ask additional questions. After challenging the first five jurors, the parties selected six jurors, in all, in the first round, at the conclusion of which defense counsel placed the following statement on the record: "I would like to note on the record that the Court left the courtroom while juror number two was responding to the questionnaire, did not return until juror number six almost completed the questionnaire and left again, was not present in the courtroom during the last five minutes or so of the district attorney's voir dire and I think that is at the best [a] delegation of judicial responsibility and I request a mistrial." The Trial Justice immediately responded: "Let the record reflect the Court left to go to the bathroom. I don't think it's necessary that I be present in the courtroom while the jurors respond to their questionnaires. The court reporter is here. If there was a problem or an issue come up I instructed them to let me know. * * * Application for a mistrial is denied once again as being totally frivolous".

While the right to a trial by jury, guaranteed by the Constitution of the State of New York (art I, § 2), means a trial at which a Judge presides *(People v Ahmed,* 66 NY2d 307, 311-312, *rearg denied* 67 NY2d 647), it does not necessarily follow that the absence of the Judge entitles a defendant to a new trial when his absence is de minimis and the defendant has not suffered any prejudice. Of course, the preferable practice would be that a Judge, faced with the need to absent himself, call a recess rather than leave the courtroom, even when his supervision seems not to be required.

The principle that not every absence, no matter how brief, requires reversal has been recognized in numerous cases in which the Trial Judge, during voir dire proceedings, absented himself. *(See, e.g., Stirone v United States,* 341 F2d 253, 255-256 [3d Cir], *cert denied* 381 US 902 [Judge in chambers " 'twelve steps away' " during exercise of challenges]; *Haith v United States,* 231 F Supp 495 [ED Pa], *affd* 342 F2d 158 [3d Cir] [Judge's absence during voir dire normal practice in district]; *Bright v State,* 165 Tex Crim 291, 306 SW2d 899 [Judge in another room, out of hearing of voir dire]; *People v Bolton,* 324 Ill 322, 155 NE 310, 313 [Judge, just outside the courtroom, asserted he could hear proceedings].)

Central to each of these determinations was the lack of a claim of prejudice by virtue of the Judge's absence. As the court in *Bright v State* (165 Tex Crim, *supra,* at 293, 306 SW2d, *supra,* at 900-901), stated: "It is well settled that the judge should be present at all stages of the proceedings and if

he finds it necessary to leave the courtroom he should order a recess. [citations omitted] However, the judge's absence from the courtroom is not ground for a reversal unless injury or prejudice is shown to have resulted therefrom, and a judgment will not be reversed if the appellant's bill of exception fails to show the occurrence of anything of an objectionable character during the judge's absence. [citations omitted]".

This principle is not limited to voir dire proceedings; it has been applied where a Judge left the courtroom during summations *(Harris v State,* 409 So 2d 1006, 1008-1009 [Ala Crim App]; *State v McIver,* 238 SC 401, 120 SE2d 393, 397; *People v Morehouse,* 328 Mich 689, 44 NW2d 830, 831-832, *cert denied* 341 US 922), during jury deliberations *(People v Sian Mai,* 175 AD2d 692, *lv denied* 78 NY2d 1081; *United States v Pfingst,* 477 F2d 177, 196-197 [2d Cir], *cert denied* 412 US 941 [Trial Judge flew to Georgia and back during deliberations]; *Sargent v State,* 509 P2d 143, 148 [Okla Crim App]; *Rice v United States,* 35 F2d 689, 696 [2d Cir], *cert denied* 281 US 730) and even during a witness's testimony *(Grant v State,* 385 P2d 925 [Okla Crim App]). Significantly, in *People v Sian Mai (supra),* this Court rejected an argument much like the one advanced here, that the Judge's absence from the courtroom during a readback of testimony required reversal even though the defendant suffered no prejudice. While noting that "a read-back of testimony in the absence of the court is not a favored procedure" (175 AD2d, *supra,* at 693), we pointed out that the Trial Judge "was available to maintain control over the readback, and did, in fact, appear to resolve a dispute as to the scope of the readback" (175 AD2d, *supra,* at 692). While the defendant in *Sian Mai* consented to the court's absence, it is clear that we found the court's availability and the lack of prejudice to be an independent basis upon which to reject the defendant's argument. And, while the Second Department *(see, e.g., People v Rawlings,* 178 AD2d 619, *supra; People v Lumpkin,* 173 AD2d 738, *supra)* has taken a different view on this subject, the cases provide no reasoned argument for the proposition that a brief absence of the Trial Judge from the courtroom requires reversal despite the lack of prejudice to the defendant.

Here, the Trial Justice was, concededly, absent from the courtroom while five prospective jurors, only one of whom, number 6, as to a portion of whose answers the Trial Justice was present, was picked, recited their questionnaire answers. When defense counsel noted his objection to the Justice's

absence, he did not even suggest that any improper questioning or anything requiring the Judge's attention had taken place or that the Justice's presence would have made the slightest difference. While defendant now suggests that the Justice's absence made it impossible for him to make a record of such occurrences, the plain fact is that his counsel had no hesitancy in noting such absence at the first opportunity and could just as easily have noted any irregularities that might have occurred during the same. In the absence of such a record, this Court should not presume that there was irregularity. (See, People v Harris, 61 NY2d 9, 16; People v Diaz, 212 AD2d 412.) Since the Trial Justice's absence for a part of unobjectionable voir dire and routine answering of a background questionnaire was de minimis and there is not the slightest suggestion that defendant had been prejudiced thereby, he is not entitled to a reversal and new trial.

In *People v Silver* (240 App Div 259, *supra*), the opinion of a bare majority of this Court reached its conclusion by a discussion of earlier authorities agreeing that a Judge should remain in the courtroom, a principle with which no one would disagree. The Court did not explain with any persuasiveness why a de minimis absence would require reversal where defense counsel has not been able to state for the record, after the fact, that any objectionable occurrence had taken place in the Judge's absence. We decline to follow *Silver*.

We have examined defendant's other contentions and find that they are without merit.

Accordingly, the judgment of the Supreme Court, New York County (Budd G. Goodman, J.), rendered June 26, 1992, convicting defendant, after a jury trial, of sodomy in the second degree and sentencing him, as a predicate felony offender, to an indeterminate term of imprisonment of from two and one-half to five years, should be affirmed.

ROSENBERGER, WALLACH, ASCH and WILLIAMS, JJ., concur.

Judgment, Supreme Court, New York County, rendered June 26, 1992, affirmed.